I wonder if counsels would step up and let us know who you are. Those are we're going to do. Good afternoon. I'm John Moran. Mr. Moran. Councils, 15 minutes aside. I think you've all argued before this court before. She hasn't. Oh, you haven't? Is this your first time in the appellate court? Okay. Well, welcome to the appellate court. Okay. You may proceed, Mr. Moran. I think you can safely assume we're familiar with the briefs. Very interesting case. May it please the court, counsel. You're talking about this case or the one we just had? I think this case is interesting. This is a very interesting case. In a more substantive fashion, it's interesting, kind of like, oh, my God, that shit. Right. In any event, Mr. Goldberg and I are going to split our 11 minutes. We'll reserve three or four minutes for possible rebuttal. Okay. Mr. Goldberg is going to stress the corroboration reliability question, and I'm going to talk about availability. Okay. All right. Well, why don't we, I know you have, we do, we've read these briefs, we know the facts, we know the testimony, we know there was three witnesses that testified to statements. But, Mr. Moran, and I know you did not try this case. That's correct. Now, the trial lawyer or the defendant, how would you say that he approached the notion of availability? How he approached it? Yes. Did he contest availability, or did he actually take the position that the witness was available and subject to cross-examination? No, I was looking at the documents that he filed and attached to the brief. He took the position that the witness was not available. Didn't he argue in closing? Didn't he argue in closing that the witness was here? You heard him? He was a, I don't, he referred to his youthfulness, and he said that you should accept what he testified to, and that you should believe what he testified to, and you should accept that what these other people said was not true. That's the catch-22, that the case is that the State is relying on places of defense attorney. In this particular case. But this defense attorney, and it wasn't you, Mr. Moran. I mean, this defense attorney took that position at trial. And the reason I'm, I mean, I've reviewed the record. There's multiple places where that position was taken. He states on the record at one point that we concede that the victim was subject to cross-examination. We concede that he was here and available. So my question to you is, before we get to the true merits, can you now take a position contrary to that attorney, because you're another attorney? I can take a position that's contrary to what you're saying Mr. Tice took, because I believe that Mr. Tice did several things, including he challenged and raised a testimonial issue, which meant that he obviously had to assume that the witness was unavailable. Now, there is a timing question here, because a number, one of the problems here is that a number of decisions are all coming down at the same time. And at the time that Mr. Tice tried the case, this court's case in E.H. was still sitting out there saying that 115-10 is unconstitutional. And so we don't have, in where Rolandos was not decided. No, but that's a different case in a procedural posture where the state, for whatever reason, conceded that the witness. That raises another part of my argument. Okay. In any case, I think that Mr. Tice faced a situation that the child was put on. The court had issued a written ruling saying that, as far as he was concerned, the child was available because he sat on the witness stand. Okay. Well, then here, could I just say one other thing? If the posture changed and the witness was suddenly unavailable, then should the defense attorney still proceed with the strategy that perhaps is a very good, sound one? Or should he say to the judge, Judge, we want a new hearing now outside the presence of the jury, because we truly believe that this witness is not available and not subject to cross-examination. So that the court, in its wisdom, could correct the error of its ways. In other words, the court here ruled that the statements were going to be allowed if the witness testified and was available. So if the defense attorney feels suddenly that, you know what, I don't have any opportunity to cross-examine this child. There's nothing for me to do here. I want the court to reopen the hearing and let's put the state to their test and have them put on corroborating evidence. Well, the statute requires that the state puts on the corroborating evidence. If the witness is unavailable. Well, it also, though, you know, the reliability hearing and also the proctor, all of these cases create an unusual interaction because fundamentally they're all predicated on reliability. I mean, you can't have an exception to the hearsay doctrine without saying that the out-of-court declaration is reliable in some way. This particular statute says that there has to be corroborative evidence. If we assume that the witness is unavailable, there has to be corroborative evidence of the act, which is the subject of the statement. And, of course, we don't have any corroborative evidence of any acts in this particular case. But the state was not in a position to proceed that way because everyone had framed this differently. Is it unfair to the trial court now to say you should have done something different when no one was jumping up and screaming and saying, hey, judge, this child is really, truly is unavailable and isn't subject to cross-examination. Isn't that totally unfair to the trial court to now say, in hindsight, you did the wrong thing, but nobody told you to correct it. No one said, let's have a new hearing. That's my first question to you. Okay, well, the child's testimony for what there was available occurred on the first day of trial. There was no prior indication of what the child was going to testify to. What Mr. Theis was working with were the statements basically of Daniel Butz because the other statements are all over the place. Selene M. was impeached rather stringently by Officer McCarthy's testimony. The mother really didn't testify to it. It wasn't a crime, at least not a crime. This defense counsel at the opening day of trial had 36 counts. Yeah, but they went with two, didn't they? The jury wasn't. No, no, no. The state, on the morning of trial, nollie 34 out of the 36 counts. And then they amended the complaint for something that had been in one of the nollie counts. Then the trial began with some opening statements. Now, the state at that point also produced a notification that both states' attorneys had spoken with the child in their office. And the state's attorneys indicated in that notification, which is attached there, that the child was going to say one more thing than he actually testified to. Okay. Well, you know what? Let's forget about this issue that nobody really approached this from the other section of the statute. Let's just go right to the heart of the matter. There's multiple cases now that say that if a child testifies like this child and the attorney cross-examines the child and doesn't really cross-examine the child but just asks a few questions, doesn't really want to make the child look terrible. I mean, you know, they're stuck with a young, now 7 years old, doesn't really want to hammer anything with this child. Now, there's multiple cases now that say that Crawford is not violated here because that child was there. Whether they give you what you want or whether they are able to answer your questions, if they're there and you can ask them questions and you don't, then there's no violation of Crawford because there was availability. The person testified in court, just not to the extent the lawyer would have liked. Okay. If I believed that, I wouldn't be standing here. I wouldn't be Professor Garrett. I believe, however, that we have to look at first where is the origin of that proposition. It's in a footnote in Crawford, footnote number 9. Well, I'm talking about Illinois cases. Well, they're all based on that footnote. All right. And every one of those cases cites that three of those cases are by Judge Steigman who wrote all three and the other case is out of the second district. Are you involving Judge Steigman or the footnote in the Supreme Court case? No. Judge Steigman basically wrote the same opinion three times if you look at them there. Right. And are you quarreling with his reasoning in each one? Well, it's the same reasoning. So my quarrel with Judge Steigman is that although he acknowledges that there is a last sentence of that footnote says so long as the declarant is present at trial to defend or explain it. Okay. Does that come from the United States Supreme Court? Yes. Yeah. He was relying on some United States Supreme Court authority. He's relying on the footnote where Justice Scalia in the footnote indicates that. On one hand, he says if the witness appears for cross-examination, that's the end of story. Yes. Then it goes on, though, and he says as long as. . . Appears for cross-examination. Right. He doesn't say anything about a 5-year-old with a bad memory. And he says is presented at trial. . . How will he make. . . Would you want us to create a whole new sub-branch of the law of availability? No. No, not at all. No? In fact, Illinois. . . Wouldn't we have to distinguish between some where he's maybe almost available or he remembers vividly one incident but not none of the others? We do that already, Judge, and we've done it for a number of years. And the Illinois Supreme Court in the Stetchley case makes reference to it, and that is we look at the incomplete memory of a witness as a reason to hold them unavailable. And in Stetchley, they refer to the Ramey case. Right. And they refer to Cathy. Cathy makes it very clear. It's the Ramey case? Ramey is decided. . . Ramey. Right. And that hasn't been discredited at all in your opinion? No. No, it's reaffirmed in Cathy. And then Cathy is reaffirmed in Stetchley to the extent that it's relevant to this case. And there's been no. . . Well, let's assume that this case is fairly unique, this one we have before us now. It is. In terms of what the young man did testify to and what he did not testify to. Does the timidity and cross-examination of defense counsel ever play into this? No. Defense counsel is placed in an absolutely untenable position. The witness. . . Why? No, wait. Why? He's got a point. Because if he inquires further, he's rehabilitating a witness against his own interest. Well, he's also proving the State's case because the child didn't testify to a criminal offense. Right. So how. . . He's guilty of ineffective assistance of power. He's also subject to the possibility of an objection based on that he's going beyond the scope. Well, that's true. So I understand what you're saying when he's placed it, but are you suggesting then that any time defense counsel finds himself in an untenable position? Because in his view, his direct examination really supports his argument that the kid's not a villain. But if he goes and if he asks any questions, he may have him in a situation where he now will become a villain through his own devices. Right. That's your argument, basically, as I understand it. It basically stimulates the child to remember. Right. And there's nothing here that should have alerted anybody to say, Judge, we want to have a new hearing. We want to have a hearing because this child is unavailable, and we want the State to have to establish through other corroborating evidence that a crime occurred. Well, he did present that to the court in his post-trial motion. Isn't it a little late then? The jury has already reached a decision? The jury has already heard a number of individuals by that time. The statute has been around for a while, and either side could have suggested that there be a hearing in the event that the child is not available. Couldn't that have occurred? Right, and that's happened in a number of cases where the State has suggested a hearing. And what about the defense? What about the defense? What is precluding the defense from doing that? There's no bad strategy with having a victim who can't testify and then arguing, as Mr. Tice did, that this child testified truthfully. You heard him. You saw him. He didn't say anything, really, and that's what you should believe. Well, there's several responses to that. But first, the most overriding response is simply that all of the cases that the State relies on and all of the cases that are contained therein, which are Illinois cases, which deal with this issue, don't have the problem that we have. They all have quite significant corroboration that a criminal act occurred. What about Sharp? I know you didn't think that that's... Sharp, first of all, let me point out one thing. The Fourth District, Judge, the Fourth District requires an audio and videotaping of all of these advocacy statements. That's why in every one of these cases there's either an audio and or videotape. We don't have that in the First District. We haven't required it. So they start out with a leg up on us. One of the big questions here was Daniel Butts. She's testifying to all these things, and then we have a child that gets out and he doesn't even know who she is. That's different than all of the other cases, every case, including every case that's cited in the Bryant opinion. That is totally different. This child doesn't remember her, doesn't remember the dolls. I mean, he was, you know, he wasn't that young. The dolls that he would... The only thing he remembers is the night before he got on the stand is the first time he mentioned, he says, that Michael Major Flisk, who's an impaired person, asked him to sit on his hand. The other question, which the jury properly asked, is where's Andrew, who's two years older? What did you say about he was impaired? Yeah. Was there testimony regarding that? It's in the PSI. Oh. This is something that's not in the record of the proceedings for the purposes of the trial or the hearing, is it? No. Did anybody even testify about the PSI? Well, they did in the sentence. He considered the PSI, but did someone present any of this testimony about him? How was he challenged in what way in the PSI? What did you recall? He has a... Learning disability? More than a learning disability. It's not important to put it on this record. What is important is that in all of these other cases, now in the Bryant case, the court cites people versus Sutton from the Illinois Supreme Court as affirming this ability to explain or, you know, the last line, explain or defend your statements. Talking about the out-of-court statements. Well, this kid didn't remember making any out-of-court statements. So under footnote 9, he's not available. But in any case, in Sutton, again, at 96, 233 Illinois 2nd, 89 and 96, we have DNA evidence vaginally and rectally. I mean, where are you going with that case? There's a crime and they've got the right guy. In the Hampton case, out of this district, 387 Illinois public or 206, 210, the co-defendant implicated the defendant in the murder. I mean, that's a little more direct than what we have here. Well, since we're going sort of off the record with things that occurred, now if there had been this hearing where the judge could have determined that the child was not available, then the state would have been required to establish corroborating evidence. Isn't that correct? To use those statements, there would have to be corroboration. That's correct. So was there some suggestion in this record that one of these incidents was witnessed by the victim's brother? That was testified to by Daniel Fox. If everybody had started out, if everyone had been under the impression that there was going to be an unavailability problem, a lack of ability to cross-examine, could the court have then required the state to submit other proof? That would be required, wouldn't it? We're talking about doing things that nobody had the time. We have no idea what the child is going to do until he gets to the stand. All right, he got to the stand. Isn't that the time to say time out? I want a new hearing. I'm not able to cross-examine. I can't test this witness, and if I can't test the witness, the state should be put to their test of establishing by some corroboration that this happened. So if we're asking a trial judge, you're suggesting that we go back and try to correct something that everybody else liked at the time. Well, I don't think you can characterize the defense counsel's posture as liking it. He filed a long written memoranda, all of them suggesting that the witness, especially before trial, that the witness wasn't truly available. In what document did he do that? Well, one of the things that you see by the motions that are attached is that everyone below was putting the department before the courts because both the defendant and the people's response and the judge's decision, which are attached to the back of my brief, start out by trying to determine whether or not people are available or unavailable. And the judge says that the state represented that the child is going to testify at the trial, I don't recall the state raising this particular issue. I know. It didn't seem that anyone really addressed this question that I'm raising, and that is when everybody's postured for a certain type of proceeding and then if it doesn't come out exactly that way, do you get to then argue it should have been done this other way without ever trying to give the trial court the opportunity to correct something that was a problem? Well, he does raise it in his motion for judgment of acquittal or alternatively trial. One of the problems here that we fall into is are we asking the defense to bear the part of the burden of proof? No, I'm not suggesting that at all. I've looked at the motion for the new trial. I don't see what you're suggesting was raised, that the child was unavailable, not subject to cross, and that the state should have been required to present corroborating evidence. Well, going to the question of the state's action or inaction regarding the ability of the child to testify, this raises the question which has concerned me somewhat, and that is that why did the Supreme Court vacate the decisions in Sharp, Kitchen, Bryant, and ask them to look at their decisions in light of Rolandis if the only salient point to those cases is the concession of unavailability which was made in Rolandis, R.I.G.? It can certainly be inferred that the reason the court did that was to see if there were any, if there might be any further concessions on availability. That would be the only thing because all these other issues weren't as, as the Bryant case says, weren't decided. So why bother to vacate the opinions? They all reaffirm on exactly the same basis. So the Supreme Court apparently meant something, and in that particular case, Rolandis, the woman, the young lady, the minor testified in pretty much the same manner as the young boy in this particular case. And what we've got is the situation where in Rolandis you have the state making a concession on appeal that no one can understand, but they do because it's not its blame. Then we're left with the situation where a constitutional right becomes a function of prosecutorial discretion because if the prosecutor can make this concession, then all the tablets fall over, the dominoes fall over, and you've got an unavailable witness, and therefore we need to have corroboration, and therefore we need to then determine under Crawford whether the testimony that we're seeking to bring in is testimonial or non-testimonial and go through all those tests. And then ultimately we have the question of even if it is testimonial, is it harmless error beyond a reasonable doubt? In this particular case, because of the other lack of any corroboration, it can't be harmless error beyond a reasonable doubt. If it was error, our position is that the defense counsel raise the question, and I will research, revisit the record, but I don't believe that this is the kind of issue that can be waived because it goes directly to the integrity of the judicial procedure. It's not about waiver. I'm not suggesting waiver. What I'm suggesting more is that if you take a position at trial and use that position to present your defense, then you can't claim that there was error in that same proceeding because you took a position inconsistent with your. So it is sort of a variation of a waiver argument, but it's generally this notion that if you try a case and you present it as the child was there, he didn't tell you anything, there's no evidence of a crime, you should believe that and believe his testimony, that then you can't come here and say, well, you know what? He really wasn't available. He really wasn't subject to cross. That's what I'm saying. But what you've really done is set up Mr. Moran for a post-conviction petition on ineffective assistance at trial. No, because I don't believe the trial counsel is ineffective at all, and I'm not suggesting that for one second, and I don't want the record to suggest that. That's not what I'm suggesting. Oftentimes with child victims, if you think that the child victim isn't going to present any evidence, that you can clearly argue, and many good, fine professional attorneys have argued that this child, nothing happened, and that he told you that when he testified. I'm not suggesting for one second that this was ineffective, and it wasn't. I'm not suggesting that. No, I think ultimately the problem that you raise, Your Honor, which there is a case where defense counsel got the judge to rule on this issue. I'm not sure, but I think it was in the Learn case in the second district. I think the ultimate problem is that when this case went to trial, the law was even more unformed than it is as we argue it today. But, Mr. Moran, you've been around for quite some time, and I don't mean that in the pejorative sense, but you're a practicing attorney. You've argued here many times. You know that these child sexual assault cases often involve statements by others, and that sometimes the child testifies just like this child did and doesn't really say much. So, I mean, these cases have been tried for a while, and there's good lawyers out there that tried them with the way this case was tried. I know what you're saying, Judge. I do think, though, that the issue is a valid issue. Without ruining all the rest of the time, I'd like to have Mr. Goldberg just answer some of your questions regarding the actual facts. Thank you. Good afternoon. May it please the Honorable Court. Before Ms. Moran told you I'm going to address corroboration and reliability, but before I do that, I want to answer the Court's concern. At least I think I can. Before we even get to whether the witness is unavailable or available, I think that we can go back to the actual 11510 statute, and I think that In Re E H tells us that if you can decide a case on statutory interpretation grounds as opposed to a constitutional analysis, whether someone's available or not for confirmation purposes, we're going to do that. And I think if we go back to the actual reliability hearing, one thing that was somewhat glossed over, and it's not necessarily highlighted in our briefs, but I want to talk about it. Before you can get to reliability, one of the out-of-court statements that someone can testify to, the hearsay statement has to be a matter or detail pertaining to an act which is an element of the offense. And when you look at some of these hearsay statements that were admitted, before you can get to reliability and availability, they're not elements of the offense, which is important because no matter what position trial counsel took, it's our position that it would have been an abuse of discretion to even allow them to introduce these hearsay statements at the trial to begin with, whether the boy testified in whatever fashion he did. And specifically, the mother of the minor, she testified that the hearsay statement that she brought into evidence was that the minor said that the defendant put his hands down his pants. It's not a crime. It's not an element of the offense. That doesn't even meet the initial threshold question of 11510 on its face. Before you can get to the circumstances of reliability, before you can get to whether or not that's considered a testimonial statement, and of course in this particular case it was because according to the test and specialty, because it happened after the mother went to the police station, after she went back home and said, we're going to have a very important conversation. This is the solemnity that the specialty case talks about. There's no doubt from our perspective that this can be a testimonial statement, and then you're dealing with availability and unavailability. But again, the threshold question at its onset on the face of the evidentiary statute, 11510A2, it's not an element of defense for which the subject is a prosecution. Because there was 36 counts originally, 34 of them were not. The only two you're left with is a mouth to a penis and a finger inserted into an ant. That has nothing to do with hands down pants. When you get to the – and again, I should address it now, when you're dealing with reliability, it's an unreliable statement. Of course it's a testimonial statement, but it's unreliable because what prompted all of this was the mother got a call from the – We know the facts. We know the ant testified to what she overheard the boys saying, and then we have the advocate testifying. I'll address the ant. These facts are in dispute, and this is what I think that, again, before we even get to whether the ant testified to the elements of an offense, which is the first inquiry under 11510, there is significant impeachment, and there's also a stipulation that was part of the reliability hearing that's exceptionally important. All of a sudden, the stipulation from Detective McCarthy was that the ant, Celine, overheard Philip tell Nick, you've got to tell your mom, and then she heard Matt say, he stuck his tongue in my mouth. It wasn't Michael Major Fliss stuck his tongue in my mouth, which is what ultimately her testimony became at the trial. It was he. And then she said she went to the kitchen, and one of the boys says, Mike stuck his tongue in Matt's mouth and put his finger in Matt's butt. And Celine did not know he made that comment. Again, the cases that interpret 11510, they say you have to personally hear the declarant say it. She can't rely upon Philip Rizzo or one of the other boys to tell her what someone else said. It's double hearsay. It's too far removed. And the Pettit case tells us that with that stipulation in place, not only is it unreliable, and I'll talk about that in a moment, but she never actually heard it. And when it was completely inconsistent with her testimony at the reliability hearing, respectfully to the trial court, they can't make a determination on its face that now all of a sudden, that it's just reliable. And the other problem being that, excuse me, I lost my train of thought here. Oh, the other problem with the aunt's testimony is that at one point she says that she's in a joining room and the other point that she's in the kitchen. There's inconsistencies as to where she is. And superimposed over all of this, the reliability of the general commentary amongst the kids was they were having like a gross-out session. Who could gross out the other one worse? The minor in this case was the youngest of everyone sitting at this kitchen table, whether the aunt heard or not, the circumstances of how this conversation came about are certainly relevant and it goes to the heart of what's considered reliable. If a young child is going to say, oh, well, he put his tongue in my mouth, or even if she did actually hear him say, he put his finger in my butt, ooh, gross, the kids were howling, everyone was going crazy. That's unreliable. And when she goes to question him, when she's trying to find out who did this, did it happen, he gives her a little nod. He doesn't really, I mean, if that's his affirmation and that's the best he can do, that doesn't make that particular statement reliable. And then again... Well, how about the doctor who determined that there was an anal protrusion here? Your Honor, respectfully, that's not the case. There was no doctor that ever, there was no medical evidence in this case. There was nothing to corroborate anything. There was no witnesses such as the brother who was an apparent... Well, we really can't get into that, can we? Because everybody proceeded under this notion that the victim was going to appear. So, you know, we can't talk about corroboration when no one, no one brought this notion to the court at any time before or after, even in the motion for a new trial. Well, I think there was, I think that the trial counsel renewed his objection. I think it was a general objection to this testimony coming in period. Whether it's under the confrontation clause analysis, whether it's under Crawford or not, you still have to remember, you still have to answer, respectfully, the threshold question. It doesn't even fit under 11510. These aren't even elements of the offense that these people are talking about. For example, the advocacy worker, Danielle Butz, she talks about, again, hands down pants. It's not an element of the offense. Okay, so you're basically going to, I think we understand your argument now, that there was no testimony that a crime occurred from anyone. So that's good. Now, I mean, we really do have to hear from the other side, unless there's something more that you need to tell us about that. You're basically arguing none of these statements actually amounted to statements regarding a crime. Well, no. I'm arguing that on a best-case scenario, if we actually believe Ms. Moran's best-case interpretation, stretching it as far as you possibly can, sweeping the impeachment under the rug, perhaps a finger in the butt, if the court finds that the record shows that she overheard the declarant, the minor in this case say it, sure, I guess that's an element of the offense. Danielle Butz, the caseworker, before you determine whether it was testimony or not, I suppose if you said finger in the butt, that's an element of the offense. You make a very good point. The point is that none of this issue, none of these rather persuasive arguments that you're raising right now were raised before the trial court, were they? Other than this general objection. Generally, I can't say that they were. I don't think that they were. Well, of course they were. And I can't say that they were. We're hearing them for the first time on appeal, which is not to say that they aren't compressive arguments. And that's fine, but I think that these are such significant issues, again, I don't want to talk about them. That we ought to consider them, even though the trial court never had a chance to. Well, I think the trial court did have a chance to consider, again, whether it meets the requirements of one who attended. Okay. I understand your point. The issue was broadly enough presented at the trial court so that your more specific objections could have been shoehorned in. That's probably a fair assessment. And I understand I'm running out of time. I just want to say a couple of things, and I'll argue some of this on rebuttal, I suppose. But in essence, whether the child's deemed available or unavailable, there's a problem. If you excise what's considered, first of all, elements of the offense and what's also considered reliable, you don't have much left, if anything but probably the case worker. And that's not enough. Not enough without corroboration. That's what you're arguing, aren't you? That there's not enough here without corroboration. As far as sufficiency of the evidence, but not as far as confrontation is concerned. It's a different issue. Because even if you have corroboration under the statute, if you find that you have an unavailable witness and there's corroboration, you still have to deal with fraud in the confrontation clause. And that's what T.T. I think you can take from In Re T.P. That even if you meet everything under the statute, the court were to properly find the child unavailable. Yeah. And you agree that if we find that this child was available, did testify, that Crawford's out, don't you? Yes. All right. All right. So we understand your position, that the child wasn't available. The child didn't testify. The child wasn't cross-examined. And therefore, there is a Crawford problem. And even if the child's available, there's still a problem of reversal in this case. Thank you. May it please the Court. Again, my name is T.J. Ciappelli on behalf of the people of the State of Illinois. There was no Crawford violation because this child was clearly available to testify, especially in light of the recent line of cases that has come down. And those cases find that the key inquiry in these situations is whether the child was present for cross-examination and answered the questions asked of him by defense counsel. Those requirements were met in this case. We can see this when we look at the testimony of the child in its entirety. If we look to the direct examination, he never refused to answer any question. He answered background questions fully. He testified, you know, to his name, age, school, grade. Then when asked who Michael Major was, he said it was his next-door neighbor. He testified that they played together. They played video games in his bedroom and in his basement. And they would grab hands and swing each other around. And then, most importantly, on direct examination, he testified, did Michael ever touch you? Yes. And when he touched you, where were you? On his porch. And can you tell us how he touched you? He made me sit on his hand. Okay. What else beyond that? Well, he did go in and he did say, you know, I don't remember telling my mom. I didn't tell my aunts one night before. He didn't even remember meeting with the young lady, did he? No, he did not, but he never refused to answer. Well, you know, if you read 11510 just as a layperson, not as a lawyer, don't you get the impression that what it's requiring is that the victim has to be available? To corroborate all of the hearsay that the state wants to get in. And if he doesn't corroborate any of the hearsay that amounts to a crime, aren't you really indulging yourself in a fiction when you say that he was available? I disagree. I think reading as a layperson, it reads as, does the child testify? And then when you get into the case law. If he testifies over and over again, I don't recall. I don't recall. I don't recall. You say that he's still available because the defense attorney had an opportunity to tease the information out of him through effective cross-examination, which is Mr. Moran's point. You're asking the defense to build a case against itself. Well, it's notable that there was direct examination answers regarding touching and regarding him sitting on his hands. Yeah, but it didn't corroborate in any way the commission of a crime. Last time I looked, to sit on somebody's hand does not create a sexual crime. Right, but under the case law, we're looking at, is he available? And what if he had said, I sat in his lap? Would that have been enough as far as you're concerned, whether smoke or fire? When we're dealing with the question of whether he's available, it would be. He's answering to the best of his ability as this minor could. Don't these child sexual assault cases pose a real problem? Because when the Supreme Court says that memory loss is often the very result sought to be produced by cross-examination and can be effective in destroying the force of the prior statement. These cases are, you have a child who can't remember anything, and then you're using these other statements from other witnesses to present your case. But the problem is that this isn't like your typical witness who forgets. This is a child, and you're building a case around statements made to others that the child can't recall. Right, and that's the purpose behind Section 115.10. When you're dealing with a five-year-old, you deal with those memory losses. So you want the information that was fresh in his mind and when he said it to those other witnesses. Well, isn't there an over, sort of, isn't there kind of a haze over, not that we're going to get to this, but whether that statute is constitutional in light of the Crawford requirements? I believe, reading the cases, there is a haze over it. I have to think it's much more than a haze. Everybody was surprised, of course, when Crawford came down and the majority opinion was written by that arch-liberal Anton Scalia. Okay? I mean, they were really stunned by that. Everybody was. What do you think Scalia would be saying to you right now if you were there trying to convince him that the victim in this case was available? I think Scalia would tell me to look at the case logs. Well, I think he'd be a little harder on you than we are. Most likely. And a little more sarcastic, I suppose. No, but seriously, this is a very serious issue. Because, as Mr. Moran has pointed out, your position, in effect, puts the defense attorney in an untenable position. He's asked to rehabilitate in order to ensure availability when what he's trying to convince everybody of is that he's not available, and why should he have to say anything other than, after you've directly examined this witness, all he really should have said in this case was, defense has no questions for this witness. Right. Or other, and as Justice McBride has suggested, he could have asked for a hearing. Yes. Okay? Out of the presence of the youngster on this issue of availability. He could have done that, I suppose. Right. But why should that be his burden? The burden of availability is on you. Well, at trial, the defense counsel most likely saw this as a good point in his position. This child saying nothing happened. I mean, that's clear in his line of questioning. He only wanted to identify that you could see onto the porch. He didn't want to tap into any of this touching. I see your point, yeah. And so he can use this now. He can say, this child got up there and he didn't say anything. The fact is, though, this victim didn't corroborate any of the essential elements of the crime of which Mr. Filisk was convicted. Right. But he did testify. He did testify. He was available. Under the line of reasonable case law, that's come down. Well, this is Alice in Wonderland. I don't think that was what corroborated. Well, you know what? When the statute was created, one of the reasons to require the state to corroborate when the child couldn't testify was so that there would be proof to establish the elements beyond reasonable doubt. And here, everybody tried this case a different way. Now, should the judge have sua sponte said, let's take a timeout? Should the state have said, judge, we should put on some corroborating evidence? Should we try to get that brother who saw this come in? Is this the kind of situation that we should be, you know, So should we now say that the trial should have been conducted in a completely different fashion where the trial judge who's in charge of conducting this is never given the opportunity to correct what apparently is now claimed to be a major flaw? Well, I'm looking in the record, as you pointed out, Justice McBride, it seems like everybody was happy with how the trial was going. The state put on its witness as it needed to for the section 115.10 for allowing the state... Maybe happy is the wrong word. I don't suggest that. I think it's very difficult for the state to try a case where the witness doesn't have anything to say. And it's more difficult or it's difficult for the trial lawyer to defend when the child isn't really saying anything harmful. How does that lawyer proceed? But what concerns me here is that this case, we're being asked to redo something that could have been posed to the trial judge. There could have been a stop. There could have been, let's do a new hearing. And then the court could have faced this issue. Was this child truly unavailable? Instead, we're being asked to now redo something that could have been addressed at the trial level. Right. And as Crawford points out, it's an adequate opportunity to cross-examine. And when looking at the defense counsel's cross-examination, he was given that adequate opportunity. And for whatever reason, he pursued it in the direction he did. I just want to show that this porch is visible. This child testified that he was touched by the defendant on that porch. So the defense counsel got up there and showed this porch is visible. He never wanted to cross-examine him on the touching. And he probably feared, if I do examine him, maybe more will come out. Where right now, I sit in a very positive position where he has testified nothing, and I can use that later. And as his line of cases has come down, it says, did he appear for cross-examination, and did he answer all the questions? And the answer is yes. He got on the stand, he testified under oath, he never refused to answer like the minor in In Re Rolandes G, or In Re TT, where she froze up as well. So since the minor was available, the only other requirement under Section 115.10 is that the statements be reliable. And as counsel didn't mention, that's an abuse of discretion standard. So we have to look at, did the trial court abuse its discretion in finding these statements reliable? And that simply cannot be said. Oh, once you find that the youngster was available, that's the ballgame's over. Basically. I think even Mr. Marantz would think that. Well, maybe not as bedded, but he wouldn't challenge it as vigorously as he's challenging it now. And since I'm looking at this case, I'm looking at the fact that the testimony, and with the cases, and with the way that the defense counsel proceeded, this child was available in this case. Okay. And since the statements were reliable, no abuse of discretion, they were properly admitted as a hearsay exception. Thank you, counsel. Thank you. There's an able brief, and we're going to hear just very briefly, Mr. Goldberg. I see you straining at the bit there before she's even sat down. Here you go. You're up again. Thank you. First off, the speculative statement is another element. But if the child's available and there's inquiry, if there's reliability, it still has to be, still has to have the out-of-court statement dealing with the element of the offense. We understand that, Mr. Goldberg. We really do understand that. Okay. Now, the problem with renewing your objection or changing, or saying, Your Honor, I want another hearing, how can you, under the Constitution, prepare a proper defense when you expect all the evidence to say, or to open to a jury and say, Members of the jury, this is what the evidence is going to show. And the theory, and then all of a sudden, math hell. It's like telling the jury that the defendant's going to testify, you're going to hear all sorts of evidence, and then the case goes so well and they don't hear from the defendant. And at the end of the case, the jury says, well, what happened? Where was he? You promised you lied. I'm going to hold it against your client. You can't just change the game in the middle. The opening statement was nothing like what you just said. There was no backpedaling. If you read the opening statement, it was very brief. There was no backpedaling that would have had to have been. Well, he had a theory about what happened on the porch and what the child was going to talk about, and the child didn't talk about that. And, again, just so there's no issue about waiver or anything else, this deals with the fundamental integrity of fact-finding that's essential to the elements of this charge. Well, no, I think Justice McBride's point, basically, is a valid one. If he had made, outside of the presence of the jury and after the victim had testified, an impassioned plea to the court to make a finding that this case should never go to the jury because the kid's unavailable, he might have gotten a directed verdict right there. Well, he did ask for a directed verdict, and he also renewed his objection to Daniel Butz. And the reason why that's important is because that's where the meat of these I do. And Your Honor talked about the untenable position someone's going to be in by questioning someone who doesn't say anything. I'm just being devil's advocate. I don't really know whether I'm right or wrong. Well, Your Honor, I think you're 100% correct, and as far as your colleagues on the second district appellate court and people who just learned, there's some wonderful language that talks about just that. They say a defendant is placed, however, KO in that case, didn't testify at all about the charge in this case. Just like the minor here. In order to get a declarant to, quote, defender-explained testimony, and that's the language of Crawford in the footnote, not given on direct examination, a defendant is placed in the untenable position of both trying to elicit testimony about the alleged event and attempting to challenge and refute the very testimony he was forced to elicit. Mere presence and general testimony are insufficient for the appearance of a witness pursuant to 11510B. What's the name of that case? People v. Lerner. Did they have a hearing? Did they stop and say, did they say that this victim is unavailable? That's a very good question. I'm not quite sure. I can find out. No, that's all right. But, Your Honor, they also talk about that the only corroborative evidence in that particular case was that there wasn't any at all. It was only presented in the former of the various recitations of those out-of-court statements. So, I mean, that deals with the next issue. When Your Honor talked about Justice Scalia, there is respectfully, I don't think that he would ever suggest or anyone in the Supreme Court would suggest that having a witness in the witness chair say, nothing happened or I don't remember even basics of meeting the people or dolls or I don't remember kindergarten, would satisfy the availability requirement of Davis v. Alaska or progeny cases, the long-standing cases that deal with what it takes for a case to be available. But also Rule 804 of the Federal Rules of Evidence, you can declare someone unavailable by simply based upon memory loss. And if that's the case, then you're getting into this confrontation issue and whether the statements are testimonial or not. But before you even get to there, if you're unavailable in the sense of Rule 804, then you also have to have corroborating evidence under the 11510 statute. And that is just void in this case, no matter which way you look at it. So you're dealing with someone who is incarcerated for a period of six years, that could have easily been 25 years. With this type of evidence, with the way this played out, respectfully we're asking that his conviction be reversed outright or at a minimum, reverse and remand it for a new trial instead. Thank you for your time. Mr. Kelly, thank you to all three.